# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **AEGIS SECURITY INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff/ Counterclaim Defendant,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACT. NO. 1:23-cv-374-TFM-C** |
| | ) | |
| **MW INDUSTRIAL SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant/ Counterclaim Plaintiff/ Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MAHORSKY GROUP, INC.,** *et al.*, | ) | |
| | ) | |
| **Third-Party Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is *Plaintiff's Aegis's Motion to Dismiss Counterclaim of MWIS, or Alternatively for Judgment on the Pleadings and Incorporated Memorandum of Law* (Doc. 91, filed October 8, 2024) in which Plaintiff/Counterclaim Defendant Aegis Security Insurance Company motions the Court, pursuant to Fed. R. Civ. P. 12(b)(6) and (c), dismiss the counterclaim that is brought against it by Defendant/Counterclaim Plaintiff/Third-Party Plaintiff MW Industrial Services, Inc. Having considered the motion, response, reply, sur-reply, and relevant law, the Court finds the motion to dismiss (Doc. 91) is due to be **DENIED**.

## I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity).

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.  The district court has personal jurisdiction over the claims in this action because the events that gave rise to this action are alleged to have occurred within this judicial district.  *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint . . . .  General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated.  The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state.").

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions that gave rise to this litigation occurred in this judicial district.

## II.     BACKGROUND

### A.     Factual Background[1]

---

[1] The facts presented in the "Factual Background" section of this Memorandum Opinion and Order are based on the factual allegations that are contained in the Second Amended Answer, Counterclaim and Third-Party Complaint (Doc. 78), which the Court must assume are true for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327 (1991).  Further, for a motion for judgment on the pleadings, the Court must also "accept as true all material facts alleged in the non-moving party's pleadings," which are viewed in "the light most favorable to the non-moving party."  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).  "[W]hen resolving a motion to dismiss or a motion for judgment on the pleadings, a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged."  *Johnson v. City of Atlanta*, 107 F. 4th 1292, 1300 (11th Cir. 2024) (footnote omitted).  Aegis references Jones' affidavit that was attached to MWIS's response to Aegis's motion to strike jury demand (Doc. 79-1).  The Court finds the affidavit is central to MWIS's fraud claims and its authenticity is undisputed.  Therefore, the Court will consider the Jones' affidavit.

Cueto Consulting & Construction LLC ("Cueto") is a Texas contractor that was awarded two contracts from the Army Corps of Engineers ("the Corps"). Doc. 78 at 12. Pursuant to the first contract, Cueto was required to construct a building for the Corps near the Granger Lake reservoir, which is located outside of Austin, Texas ("the Granger Lake Project"). *Id.* Pursuant to the second contract, Cueto was to complete certain work at the Fort Hood Military Base ("the Fort Hood Project") (collectively, the Granger Lake Project and the Fort Hood Project will be referred to as "the Projects"). *Id.* The Corps awarded Cueto the contracts for the Projects on September 27, 2019. *Id.*

As part of Cueto's work for the federal government, it was required to procure construction bonds, including bid bonds, performance bonds, and payment bonds. *Id.* at 13. Cueto did not have the financial ability to secure the appropriate bonds for the Projects and had ten days from the date when the contracts for the Projects were awarded to secure the required bonds. *Id.* Third-Party Defendant the Mahorsky Group, Inc. ("MGI") was Cueto's surety bonding agency and Defendants Jesse Bingaman ("Bingaman") and Scott Mahorsky ("Mahorsky") (collectively, MGI, Bingaman, and Mahorsky will be referred to as "the Mahorsky Parties") were Cueto's bonding agents and brokers. *Id.* Together, the Mahorsky Parties and Plaintiff/Counterclaim Defendant Aegis Security Insurance Company ("Aegis") sought an indemnitor for Cueto. *Id.* at 14. The Mahorsky Parties acted as Aegis's agents under a Surety Agent Agreement that authorized MGI to solicit proposals for indemnitors for bonds that were issued by Aegis. *Id.* Under the arrangement between Aegis and the Mahorsky Parties, Aegis would collect the premiums on the bonds and the Mahorsky Parties would be paid by Aegis a commission for selling the bonds. *Id.*

On June 26, 2019, Bingaman, at Mahorsky's direction, approached MWIS to act as a cross-indemnitor for Cueto after other potential cross-indemnitors declined. *Id.* At the time, MWIS was

an existing client of MGI – MWIS had used Mahorsky and MGI to secure bonds for MWIS's projects, including bonds from Aegis. *Id.* at 14.

Beginning in June 2019 and continuing through October 2019, the Mahorsky Parties communicated with MWIS's agents, including Jay Dollar ("Dollar") and Jim Landers ("Landers), to indemnify Cueto's bonds. *Id.* at 15. At the time, MWIS had not been a party to an indemnity agreement for another party, and neither Dollar, Landers, nor MWIS's owner, Tiffanie Jones ("Jones"), had much knowledge of, or experience with, cross-indemnity agreements. *Id.* MWIS had no pre-existing relationship with Cueto nor knowledge of Cueto's financial state or experience. *Id.* at 16. Nor did MWIS, at the time, have experience with contracting work for the federal government and had not been pre-approved to serve as a federal contractor, while the Mahorsky Parties had experience with federal contracting work and Aegis had experience in writing bonds for federal projects. *Id.*

To convince MWIS to act as an indemnitor to Cueto, Bingaman and Mahorsky represented to MWIS that MGI and/or Third-Party Defendant Brick Procurement, Inc. n/k/a Risk Strategies, Inc. ("Brick Procurement"), would perform funds control for the Projects and Brick Procurement would perform project monitoring for MWIS. *Id.* at 17. Bingaman and Mahorsky also told MWIS that MGI would ensure MWIS would receive a separate teaming agreement with Cueto whereby, if Cueto was unable to complete the Projects, MWIS would have the first right to complete the Projects at a higher rate of pay than what Cueto was to receive. Mahorsky represented to MWIS the indemnity agreements would not obligate MWIS to any bond or monetary obligation and MWIS would receive financial compensation from Cueto if it agreed to serve as an indemnitor for the Projects. *Id.* at 18. On October 24, 2019, Jones executed the agreements of indemnity for the Projects ("the Agreements"). *Id.*

Within a few months of Cueto's work on the Projects, Cueto's subcontractors asserted claims against the Fort Hood Project bonds because of nonpayment. *Id.* at 20. In January 2020, the Corps sent Cueto a notice of deficiency for the Fort Hood Project that listed several problems with Cueto's management of the project. *Id.* In February 2020, the Corps issued to Cueto a stop work order for the Fort Hood Project, and a few months later, terminated the project. *Id.*

For the Granger Lake Project, Cueto used plans that contained design flaws that resulted in the structural insufficiency of the final build. *Id.* at 20-21. Cueto also found it difficult to secure subcontractors for the Granger Lake Project due to the site's remote location. *Id.* at 21.

Neither the Mahorsky parties nor Aegis disclosed to MWIS the complications for Cueto and with the Projects. *Id.* After Cueto defaulted, Mahorsky, MGI, and Brick Procurement hired a project manager at their own expense to help complete the Granger Lake project and Aegis hired a contractor to implement a plan to complete the Projects. *Id.* at 21-22.

Both the Mahorsky Parties and Aegis knew of Cueto's financial problems and undercapitalization before the Projects began but did not disclose that information to MWIS. *Id.* at 22.

In June 2022, MWIS received from Aegis a demand letter for indemnity. *Id.* Landers then called Mahorsky, who assured Landers that everything was fine with the Projects and he was taking care of it with his own project manager on site. *Id.*

### B.    Procedural Background

Aegis originally filed the Complaint on April 27, 2023, with the United States District Court for the Northern District of Alabama. Doc. 1. In the Complaint, Aegis brings claims against MWIS for (1) exoneration and specific performance and (2) indemnity. *Id.* On August 25, 2023, MWIS filed an Unopposed Motion to Transfer Venue (Doc. 14) that the District Court granted

(15), and this matter was transferred to the Southern District of Alabama.

On October 2, 2023, MWIS filed an Answer (Doc. 19), and on October 16, 2023, MWIS filed an Amended Answer and Third-Party Complaint (Doc. 27).  In the third-party complaint, MWIS brought claims against the Mahorsky Parties and Brick Procurement for (1) fraudulent misrepresentation and suppression, (2) negligent misrepresentation, and (3) breach of fiduciary duty.  Doc. 27.  MGI filed an Answer (Doc. 34) on December 18, 2023, Brick Procurement filed an Answer (Doc. 37) on December 21, 2023, Bingaman filed an Answer (Doc. 41) on January 10, 2024, and Mahorsky filed an Answer (Doc. 47) on March 11, 2024, after the Court granted (Doc. 43) MWIS's motion to extend the deadline to serve Mahorsky (Doc. 42).

On August 9, 2024, MWIS filed a motion for leave to amend its Amended Answer and Third-Party Complaint (Doc. 67) for which the Court ordered any response in opposition to MWIS's motion be filed by August 19, 2024 (Doc. 68).  Aegis, and the Mahorsky Parties and Brick Procurement, separately filed responses in opposition (Docs. 70, 71) and MWIS filed a brief in reply (Doc. 75).  Ultimately, the Court granted MWIS's motion for leave to amend (Doc. 76) and ordered it to separately file its Second Amended Answer, Counterclaim and Third-Party Complaint (Doc. 67-1), which it did on August 30, 2024.

In the Second Amended Answer, Counterclaim and Third-Party Complaint, MWIS brings claims against the Mahorsky Parties and Brick Procurement for (Count 1) fraudulent misrepresentation and suppression and (Count 6) civil conspiracy, against the Mahorsky Parties for (Count 2) negligent misrepresentation and (Count 3) breach of fiduciary duty, and against Aegis for (Count 4) fraud and (Count 5) negligent misrepresentation.  Doc. 78.  On September 13, 2024, Bingaman, Mahorsky, MGI, and Brick Procurement filed separate answers to the third-party complaint (Docs. 82, 83, 84, 85), and on September 27, 2024, Aegis filed a reply to the

counterclaim (Doc. 90).

On October 8, 2024, Aegis filed the instant motion to dismiss (Doc. 91) for which the Court entered a briefing schedule (Doc. 92). MWIS and Aegis timely filed their respective response (Doc. 93) and reply (Doc. 94) to the motion to dismiss. MWIS then filed a motion for leave to file a sur-reply to the motion to dismiss (Doc. 95) that the Court granted (Doc. 96), and MWIS timely filed a sur-reply (Doc. 97). The motion to dismiss is ripe for review, and the Court finds oral argument unnecessary.

## III.    STANDARD OF REVIEW

### A.    Fed. R. Civ. P. 12(b)(6)

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Twombly*, 550 U.S.] at 570, 127 S. Ct. [at] 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S. Ct. [at] 1955."). Since a Fed. R. Civ. P. 12(b)(6) motion questions the legal sufficiency of a complaint, in assessing the merits of the motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., Gaubert*, 499 U.S. at 327; *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *but see also Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, all factual allegations shall be construed in the light most favorable to the plaintiff.  *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).  Obviously, therefore, a district court may not resolve factual disputes when adjudicating a motion to dismiss. *Page v. Postmaster Gen. and Chief Exec. Officer of the U.S. Postal Serv.,* 493 F. App'x 994, 995 (11th Cir. 2012)[2] (citing, among other cases, *Lawrence,* 919 F.2d at 1529, for the proposition that, under Fed. R. Civ. P. 12(b)(6), the existence of disputed material facts precludes a district court from granting a motion to dismiss).  "'When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.'"  *Thaeter v. Palm Beach Cnty. Sheriff's Office,* 449 F.3d 1342, 1352 (11th Cir. 2006) (quoting *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000)); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1215-16 (11th Cir. 2012) ("Because the Ellis law firm's dunning letter and enclosed documents were attached to the Reeses' complaint as an exhibit, we treat them as part of the complaint for [Fed. R. Civ. P.] 12(b)(6) purposes.").

## B.    Fed. R. Civ. P. 12(c)

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  Judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is appropriate when "no issues of material fact exist, and the movant is entitled to judgment as a matter of law."  *Ortega v. Christian*, 85 F.3d 1521, 1524-25 (11th Cir. 1996).  When reviewing a judgment on the pleadings,

---

[2] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

the court must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *Id*. A judgment on the pleadings is limited to consideration of "the substance of the pleadings and any judicially noticed facts." *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998). In other words, a Fed. R. Civ. P. 12(c) motion "is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard of review to a Fed. R. Civ. P. 12(c) motion).

Eleventh Circuit precedent discussing the standard of review for a motion under Fed. R. Civ. P. 12(c) indicates "[j]udgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (quoting *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001)); *see also Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) ("If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint."). These cases have not yet been explicitly overturned. However, that same language was previously utilized in the context of a Fed. R. Civ. P. 12(b)(6) motion to dismiss prior to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In *Twombly*, the Supreme Court explained that this "no set of facts" language "earned its retirement" because it is simply "an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. As caselaw is clear that the standards are functionally identical for a Fed. R. Civ. P. 12(b)(6) and 12(c) motion, the Court will apply the *Twombly* standard. *See, e.g., Perez-Acevedo v. Rivero-Cubano*, 520 F.3d

26, 29 (1st Cir. 2008) (applying *Twombly* to a Fed. R. Civ. P. 12(c) motion); *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549-50 (6th Cir. 2008) (same); *Doe v. MySpace Inc.*, 528 F.3d at 418 (same); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (same).

As a result, the Court must draw "all reasonable inferences in the [non-movant's] favor." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, the Court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The U.S. Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682).

## IV.    DISCUSSION AND ANALYSIS

Aegis argues MWIS's counterclaim fails to state a claim against Aegis for which relief may be granted for several reasons: (1) MGI did not act as Aegis's agent, (2) the misrepresentation that MWIS alleges relate to future acts and events, and are not statements of existing facts and circumstances that would cause a fraud to be actionable under Alabama law, and (3) MWIS's reliance on any of the alleged oral misrepresentations is unreasonable based on the provisions of the indemnity agreements. Doc. 91.

In response, MWIS argues MGI's alleged conduct was within the scope of the agency agreement between Aegis and MGI based on the actual, apparent, and implied authority that was

conferred by Aegis. Doc. 93 at 5-6. MWIS argues the alleged fraudulent conduct either involves claims of existing facts or is actionable as promissory fraud. *Id.* at 9-12. Finally, MWIS argues it has met the appropriate standard to show a special or confidential relationship between MGI and it such that MWIS's reliance on MGI's alleged misrepresentations was reasonable, and Aegis has not specified any language in the indemnity agreements that is contradicted by MGI's misrepresentations. *Id.* at 12-25.

The Court will address each of Aegis's arguments in turn and as appropriate.

**A.    MGI did not act as Aegis's agent**

The surety agent agreement between Aegis and MGI states in relevant part:

1.    The "COMPANY" hereby appoints the "AGENT" with full power to receive and accept proposals for surety where "COMPANY" is authorized to write Surety Bonds and where the "AGENT" is licensed, for bonds covering such classes of risks as the "COMPANY" may from time to time authorize to be issued . . . . The "AGENT" shall have the power to and authority to prepare, countersign, and deliver policies and endorsements thereto, to process cancellation and it shall be the "AGENT'S" power and duty to collect, receive and receipt for premiums on surety properly written by the "AGENT."

. . .

9.    Any employees of the "AGENT" shall be regarded as "AGENT" employees only and in no sense employees of the "COMPANY."

. . .

11.     . . . This Agreement is automatically suspended immediately upon any of the following:

    1.    Violation of any condition of this Agreement.

    2.    Fraud by the Agent or any of its employees.

. . .

18.    The acts of the "AGENT" are considered to be the acts of the "COMPANY", unless outside their assigned authority given by the "COMPANY." If this should occur, "AGENT" assumes full responsibility for said acts.

Doc. 78-3 at 2-5.

Based on MWIS's allegations in the counterclaim, the Mahorsky Parties acted within its authority as an agent for Aegis, pursuant to the surety agent agreement, when it solicited MWIS to indemnify Cueto and act as its surety. The Court must determine whether the Mahorsky Parties' alleged fraudulent representations to MWIS to induce it to indemnity Aegis fell within MGI's agency authority.

In the context of insurance, the Supreme Court of Alabama in *Washington National Insurance Co. v. Strickland*, 491 So. 2d 872 (Ala. 1985), discussed the distinctions between brokers, agents, and soliciting agents:

> A "general agent" is one who has authority to transact all of the business of the principal, of a particular kind, or in a particular case. *Southern States Fire Insurance Co. v. Kronenberg,* 199 Ala. 164, 170–71, 74 So. 63, 67, (1917). The powers of such an agent are coextensive with the business entrusted to his care, authorizing him to act for the principal in all matters coming within the usual and ordinary scope and character of such business. *Id.,* 199 Ala. at 171, 74 So. at 67. A general agent has full power to bind the insurer to the agent's contract of insurance or to issue policies or to accept risks. *McGhee v. Paramount Life Insurance Co.,* 385 So.2d 969 (Ala.1980). In fact, a general agent "stands in the shoes" of the principal for the purpose of transacting business entrusted to him. Since a general agent's powers are coextensive with the business entrusted to him, his fraudulent act is the fraudulent act of his insurer principal as well.
>
> An insurance company also has the right to employ agents with limited authority. *Robinson v. Aetna Insurance Co.,* 128 Ala. 477, 30 So. 665 (1901). A "special agent," as distinguished from a "general agent," is authorized to act for the principal only in a particular transaction, or in a particular way. *Southern States Fire Insurance Co., supra,* 199 Ala. at 171, 74 So. 67. In the insurance context, the most prevalent type of special agent is the "soliciting agent." A soliciting agent is different from a general agent in that he has no power to bind his insurer principal in contract. *Watson v. Prudential Insurance Co.,* 399 So.2d 285 (Ala.1981). However, when a soliciting agent commits a fraud upon one who seeks insurance coverage, his insurer principal will be liable for that fraud, if the fraud was perpetrated by the agent within the scope of his employment. The liability of an insurer for the fraudulent acts of its soliciting agents is grounded in the doctrine of "respondeat superior," and not the doctrine of agency. *National States Insurance Co. v. Jones,* 393 So.2d 1361 (Ala.1980). Since a soliciting agent is regarded as

the "servant" of the insurer "master," the insurer has the full right of control over the agent's actions. A general agent, however, stands in the shoes of the principal; his actions are regarded as those of the principal. The law deems the principal to have "participated" in the fraud of its general agent, and so subjects the principal to direct liability. Where a soliciting agent commits fraud the insurer's liability is vicarious, and the principal is liable in spite of the fact that he did not participate in the fraud, or even forbade it. *National States Insurance Co. v. Jones, supra,* at 1367.

An independent agent or broker is usually not an agent for the insurer at all; rather, he is the agent of the insured. *See* Code 1975, § 27–7–1. For example, this Court has held that when an independent agent or broker fails in his duty to obtain insurance coverage, the principal may sue either for a breach of contract, or, in tort, for breach of duty imposed on the agent or broker to sue reasonable skill, care, and diligence in obtaining insurance. *Highlands Underwriters Insurance Co. v. Eleganté Inns,* 361 So.2d 1060 (Ala.1978).

. . .

Although an independent agent or broker is normally an agent for the insured, for some purposes he may at the same time be an agent for the insurer as well. *See Mobile Insurance, Inc. v. Smith,* 441 So.2d 894 (Ala.1983). In such cases, if the insurer principal authorizes the agent to make representations, and the agent makes those representations within the scope of his authority to make them, the principal will be liable if those representations are false. In other words, an insurer's liability for the fraud of an independent agent or broker is predicated upon actual or apparent authority conferred upon the agent/broker by the insurer to make representations on the insurer's behalf. The doctrine of respondeat superior does not apply in the independent agent or broker situation because the insurance company does not exert sufficient control over the activities of the agent/broker to put him in the same position as a company employee. An independent agent or broker can never impose liability upon his principal for representations that are not authorized by the principal.

491 So. 2d at 874-75.

As the Supreme Court of Alabama summarized the ruling in *Strickland* in its opinion in

*Wofford v. Safeway Insurance Co. of Alabama*, 624 So. 2d 555 (Ala. 1993):

In *Strickland,* the plaintiff, Carol Strickland, met with Bruce Palmer to discuss medical insurance. Palmer described the policies of four different insurers, including Washington National. Strickland chose the Washington National policy, and she gave Palmer a check for the initial premium. Palmer assured Strickland at the meeting that her new policy was effective immediately; on this assurance, Strickland cancelled her existing medical insurance. However, Palmer did not

submit the application until one week after the meeting, and Strickland had had an accident in the interim. Washington National then refused to issue the policy, claiming that Strickland was uninsurable because of her physical condition. Strickland brought a fraud action against Washington National, claiming that it was liable under the doctrine of respondeat superior for the misrepresentation of Strickland, claiming that Strickland was its agent.

Washington National argued that Palmer was only a broker or an independent agent and therefore that it was not liable; this Court rejected that argument. We held that, because there was evidence in the record that Palmer had been licensed as an agent of Washington National by the Alabama Department of Insurance, and because Washington National had supplied Palmer with applications, sales literature, and instructions, the jury could have reasonably inferred that Palmer was an agent.

. . .

[T]he determinative factor in *Strickland* was that Palmer had actually been *appointed* by Washington National to transact business on its behalf. Because an insurer is deemed by law to have a right of control over its agents, the insurer is liable for the torts of those agents committed within the scope of their employment. This was a sufficient basis to deem Palmer an agent of Washington National, and the *Strickland* Court mentioned the evidence that Palmer had received materials from Washington National only to underscore the right of control that was imputed to Washington National by law.

624 So. 2d at 558-59.

Here, MWIS has pled MGI was Aegis's agent pursuant to a surety agent agreement and Bingaman and Mahorsky made fraudulent representations to MWIS to induce it to act as an indemnitor to Cueto, pursuant to the authority authorized under the surety agent agreement. Accordingly, the Court finds MWIS has sufficiently pled facts to show the Mahorsky Parties acted as an agent for Aegis when the alleged fraudulent representations were communicated.

**B.    The alleged misrepresentations relate to future acts and events**

A claim of promissory fraud is "one based upon a promise to act or not to act in the future." *Ex parte Michelin N. Am., Inc.*, 795 So. 2d 674, 678 (Ala. 2001) (quoting *Padgett v. Hughes*, 535 So. 2d 140, 142 (Ala. 1988)).

The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the

misrepresentation.  To prevail on a promissory fraud claim . . ., two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive.

*Michel N. Am.*, 795 So. 2d at 678-79 (quoting *Padgett*, 535 So. 2d at 142).

The burden is on the plaintiff to prove that when the promise was made the defendant intended to deceive.  *Martin v. Am. Med. Int'l, Inc.*, 516 So. 2d 640 (Ala. 1987); *P & S Bus., Inc. v. S. Cent. Bell Tel. Co.*, 466 So. 2d 928 (Ala. 1985).  The plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute a fraud. *Purcell Co. v. Spriggs Enters., inc.*, 431 So. 2d 515, 519 (Ala. 1983).  It is well settled that "a jury does not have untrammeled discretion to speculate upon the existence of [the requisite] intent [for promissory fraud]."  There must be substantial evidence of a fraudulent intent that existed when the promise was made.  *Martin*, 516 So. 2d at 642 (quoting *Purcell Co.*, 431 So. 2d at 519).

*Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 776 (Ala. 1998); *see also Trum v. Melvin Pierce Marine Coating, Inc.*, 562 So. 2d 235, 237 (Ala. 1990) ("[I]n order for a promise to constitute a fraudulent misrepresentation, there must have been at the time the promise was made an intention not to perform, and such a promise must have been made with the intent to deceive."); *Clanton v. Bains Oil Co.*, 417 SO. 2d 149, 151 (Ala. 1982) ("A promise, to constitute fraud, must be made with the intent not to perform it.").  Evidence of consistent, but unfulfilled promises can in some cases amount to substantial evidence of an intent to deceive. *Goodyear Tire*, 719 SO. 2d at 777; *Campbell v. Naman's Catering, Inc.*, 842 So. 2d 654, 659 (Ala. 2002).  Additionally, "[a] defendant's intent to deceive can be established through circumstantial evidence that relates to events that occurred after the alleged misrepresentations were made."  *Byrd v. Lamar*, 846 So. 2d 334, 343 (Ala. 2002).  However, misrepresentations made recklessly or innocently will not sustain an action for promissory fraud.  *Graham Foods*, 567 So. 2d at 862 ("Reckless misrepresentation will not support a charge of promissory fraud."), and *City of Prattville v. Post*, 831 So. 2d 622, 629 (Ala. Civ. App. 2002) (holding that, because promissory fraud required proof that the defendant did not intend to perform the act promised and had an intent to deceive, a claim of promissory fraud based on an implied or negligent representation "could not be sustained . . . .").

*Southland Bank v. A & A Drywall Supply Co., Inc.*, 21 So. 3d 1196, 1210, 1212 (Ala. 2008).

Here, MWIS alleges the Mahorsky Parties made certain representations that they knew were false, or negligently or recklessly misrepresented the truth, to induce MWIS to indemnify

Cueto.  Whether the alleged misrepresentations are for future acts, regardless, would still be actionable as promissory fraud under Alabama law.  Therefore, MWIS has sufficiently pled facts to state its fraud-based claims.

**C.**    **MWIS's reliance on any of the alleged oral misrepresentations is unreasonable due to the provisions of the indemnity agreements**

MWIS argues there was a special or confidential relationship between it and the Mahorsky Parties that would render reasonable its reliance on the Mahorsky Parties' representations despite the terms of the Agreements.  Doc. 93 at 12-25.

> A misrepresentation amounts to fraud when "'one party[ ] misrepresent[ed] a material fact concerning the subject matter of the underlying transaction and the other party[ ] rel[ied] on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action.'"  *Johnson Mobile Homes of Alabama, Inc. v. Hathcock*, 855 So. 2d 1064, 1067 (Ala. 2003) (quoting *Oakwood Mobile Homes, Inc. v. Barger*, 773 So. 2d 454, 459 (Ala. 2000)) (emphasis omitted).  However, it is not enough for the party claiming fraud to simply show that there was a misrepresentation upon which he or she relied.  *See, e.g., Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997).  Rather, the party claiming fraud must also demonstrate that his or her reliance on the misrepresentation was reasonable.  *Wright Therapy Equip., LLC v. Blue Cross & Blue Shield of Alabama*, 991 So. 2d 701, 706 (Ala. 2008) ("This Court has stated that 'fraudulent-inducement claim[s] [are] governed by the "reasonable-reliance" standard.'" (citation omitted)).
>
> Under the reasonable-reliance standard, this Court has repeatedly affirmed that "a plaintiff who is capable of reading documents, but who does not read them or investigate facts that should provoke inquiry, has not reasonably relied upon a defendant's oral representations that contradict the written terms in the documents."  *AmerUs Life Ins. Co. v. Smith*, 5 So. 3d 1200, 1208 (Ala. 2008).  As this Court explained in *Alfa Life Insurance Corp. v. Colza*, 159 So. 3d 1240, 1252 (Ala. 2014),
>
>> [w]e do not think it unreasonable to conclude as a matter of law that, in this day and age, any adult of sound mind capable of executing a contract necessarily has a conscious appreciation of the risk associated with ignoring documents containing essential terms and conditions related to the transaction that is the subject of the contract.
>
> Reasonable reliance is an element of a fraud claim.  This Court has repeatedly held, as a matter of law, that evidence of reasonable reliance is lacking when a plaintiff

fails to read documents that contradict the alleged misrepresentations. *Alfa Life Ins. Corp.*, 159 So. 3d at 1254-55; *Foremost Ins. Co.*, 693 So. 2d at 421; *Brushwitz v. Ezell*, 757 So. 2d 423, 430 (Ala. 2000); *Syx v. Midfield Volkswagen, Inc.*, 518 So. 2d 94, 98 (Ala. 1987).

. . .

The duty-to-read rule places a duty on <u>the signee</u> to read a contract before signing it, rather than creating some duty on the defendant. *Alfa Life Ins. Corp. v. Reese*, 185 So. 3d 1091, 1104 (Ala. 2015). This Court's prior decisions have repeatedly affirmed "the strict duty of a party to read the documents he or she is provided in connection with a transaction -- a duty that is limited only by the extremely narrow grounds set forth in *Potter v. First Real Estate Co.*, 844 So. 2d 540 (Ala. 2002)." *Colza*, 159 So. 3d at 1255. Under those extremely narrow grounds, "the duty-to-read rule may be avoided when . . . there are special circumstances or a special relationship between the parties or the plaintiff suffers from a disability rendering him or her unable to discern the contents of the document." *Reese*, 185 So. 3d at 1104 (citing *Potter v. First Real Estate Co.*, 844 So. 2d 540, 548-51 (Ala. 2002)).

*Brickhouse Cap., LLC v. Coastal Cryo AL, LLC*, 393 So. 3d 467, 473-74, 476-77 (Ala. 2023).

The Supreme Court of Alabama summarized *Potter* as follows:

In *Potter v. First Real Estate Co.,* 844 So.2d 540 (Ala.2002), the plaintiffs' real-estate agent told them that she represented them as buyers as much as she represented the sellers of the property the plaintiffs were purchasing. Nevertheless, when she was asked whether the property being purchased was in a flood plain, the agent stated that it was not, showing the plaintiffs an almost illegible survey. The sales contract stated that the property was not in a flood plain. At the closing, the plaintiffs were provided with another copy of the survey, and the agent again assured them that the property was not in a flood plain, contrary to what appeared in a document presented at closing. Under those circumstances, we concluded that there was evidence of a special relationship between the plaintiffs and their acknowledged real-estate agent, together with evidence indicating that the agent had employed an artifice at the closing that lulled the plaintiffs into a false sense of security as to the contents of a document the plaintiffs were unable to read. We reversed the summary judgment in favor of the real-estate agent and her company.

*Smith*, 5 So. 3d at 1210.

As to the existence of a special or confidential relationship between MWIS and the Mahorsky Parties, the Alabama Supreme Court has articulated the circumstances under which such duties exist:

[A fiduciary duty exists when] one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.

*K & C Dev. Corp. v. AmSouth Bank, N.A.*, 597 So. 2d 671, 675 (Ala. 1992) (citations omitted).

Here, MWIS alleges it had used MGI to "secure bonds on other MWIS projects, including other bonds from Aegis, and Mahorsky and [MGI] held a position of trust by virtue of that position," Mahorsky "spent years cultivating a personal as well as professional relationship with representatives of MWIS, including [Landers] and [Dollar], in order to gain their trust," and as a result, "the Mahorsky Parties and MWIS enjoyed a fiduciary relationship." Doc. 78 at 15. Further, MWIS alleges its agents told Bingaman and Mahorsky "they did not understand the indemnity proposal, or the potential risks or benefits of such an arrangement" since MWIS had not before participated in an indemnity agreement and Jones "had limited or no knowledge or experience as to what acting as a cross-indemnitor entailed." *Id.* MWIS also alleges it did not have a relationship with Cueto and had no prior experience with contracting work for the federal government, while the Mahorsky Parties "had extensive experience with, and intimate knowledge of federal contracting work." *Id.* at 16. Based on MWIS' allegations, the Court finds MWIS has sufficiently pled the Mahorksy Parties had superior knowledge of the federal contracting work that underlies the Agreements as well as MWIS' lack of knowledge of such and dependence on the Mahorsky Parties' representations such that MWIS has plausibly pled a fiduciary duty existed between

MWIS and the Mahorsky Parties. Consequently, the duty to read rule would not apply to provisions of the Agreements that contradict the Mahorsky Parties' alleged misrepresentations.

As to whether MWIS reasonably relied on the Mahorsky Parties' alleged misrepresentations, the Court finds certain of the Mahorsky Parties' alleged misrepresentations - including the representations that MGI and/or Brick Procurement would perform funds control and project monitoring, and MWIS would receive a teaming agreement with Cueto and have first right to complete the Projects if Cueto was unable to complete the Projects - are not directly contradicted by the provisions of the Agreements, and Aegis has not cited contradictory language in the Agreements. Further, MWIS has plausibly alleged it reasonably relied on the misrepresentations to its detriment.

## V.    CONCLUSION

Accordingly, Plaintiff Aegis's Motion to Dismiss Counterclaim of MWIS, or Alternatively for Judgment on the Pleadings and Incorporated Memorandum of Law (Doc. 91) is **DENIED**. Nothing in this ruling precludes the parties from reraising in a summary judgment motion the arguments that are presented in the instant motion since the Court may consider evidentiary submissions under a different standard.

**DONE** and **ORDERED** this 18th day of August 2025.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE